**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

NAWAZ AHMED,

        Petitioner,

    -vs-

MARC C. HOUK, Warden,

        Respondent.

:

:

:

Case No. 2:07-cv-658

District Judge Michael H. Watson
Magistrate Judge Michael R. Merz

**DECISION AND ORDER DENYING PETITIONER'S MOTIONS FOR DISCOVERY
AND AN EVIDENTIARY HEARING**

      This capital habeas corpus case is before the Court on Petitioner's Motion for Discovery (Doc. No. 72) which the Warden opposes in its entirety (Doc. No. 75). Petitioner has filed a Reply in support (Doc. No. 76) and the Motion is ripe for decision.  The case is also before the Court on Petitioner's Motion for Evidentiary Hearing (Doc. No. 73) which the Warden also opposes (Doc. No. 74).

      Motions for discovery and an evidentiary hearing in a habeas corpus case are pre-trial non-dispositive motions on which a magistrate judge may rule rather than making a recommendation. Fed. R. Civ. P. 72; 28 U.S.C. § 636(b).

## MOTION FOR DISCOVERY

### Standard for Habeas Discovery

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, *citing United States v. Armstrong*, 517 U.S. 456 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F. 3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003)(*quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Id., citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

In conducting the analysis that led to granting discovery in *Bracy v. Gramley, supra*, the Supreme Court provided at least part of the template which lower courts should follow in deciding

discovery motions in habeas corpus cases.

First of all, it identified the claims to which the sought discovery in that case related and specifically determined whether they were claims upon which habeas corpus relief could be granted at all. Federal habeas corpus is, of course, available only to correct wrongs of constitutional dimension. 28 U.S.C. §2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). In *Bracy* the claim was that the trial judge was biased in favor of other defendants who had bribed him and therefore had a motive to be harsh with those, like the petitioner, who had not. The Supreme Court distinguished this kind of claim of judicial disqualification from other non-constitutional claims which would not be cognizable in habeas corpus. This part of the *Bracy* analysis makes it clear that discovery should not be authorized on allegations in a habeas corpus petition which do not state a claim upon which habeas corpus relief can be granted.

Secondly, the Supreme Court identified circumstances which corroborated Bracy's theory of relief and request for discovery:

> As just noted above, petitioner's attorney at trial was a former associate of Maloney's, App. 51, and Maloney [the corrupt trial judge] appointed him to defend this case in June 1981. The lawyer announced that he was ready for trial just a few weeks later. He did not request additional time to prepare penalty-phase evidence in this death penalty case even when the State announced at the outset that, if petitioner were convicted, it would introduce petitioner's then-pending Arizona murder charges as evidence in aggravation. Tr. of Oral Arg. 43. At oral argument before this Court, counsel for petitioner suggested, given that at least one of Maloney's former law associates--Robert McGee--was corrupt and involved in bribery, see supra, at 8, that petitioner's trial lawyer might have been appointed with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations in, the Chow murder case. Tr. of Oral Arg. 17-18, 43-44. [FN11] This is, of course, only a theory at this point; it is not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan. It is true, however, that

> McGee was corrupt and that petitioner's trial coincided with bribe negotiations in the Chow case and closely followed the Rosario murder case, which was also fixed.

520 U.S. 907-908.

> We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased in petitioner's own case. That is, he presents "specific allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract.

*Id*. at 909. The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the habeas petition, but to specific **evidence** obtained outside the discovery process and presented in support of a motion for discovery, which corroborates the claimed constitutional violation.

Other parts of habeas corpus procedural jurisprudence, although not relevant to the particular decisions in *Harris* and *Bracy*, also should inform a district court's exercise of its discretion in granting discovery under Habeas Rule 6. The purpose of discovery in any case is ultimately to gather evidence which will be put before the court in deciding the case on the merits. In order to obtain an evidentiary hearing in federal court on a claim on which he has not fully developed the factual basis in state court, a habeas corpus petitioner must show cause and prejudice under *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Logically, there is no good reason to gather evidence which one will not be permitted to present because one cannot satisfy the *Keeney* standard. Therefore, if there are items of evidence sought in discovery

-4-

which could have been obtained and presented during the state court process but were not, a petitioner should make the required *Keeney* showing before being authorized to conduct discovery to obtain the evidence. *Id.*, pp. 5-7. *Turner v. Hudson*, Case No. 2:07-cv-595 (Decision and Order Granting in Part and Denying in Part Petitioner's Motion for Discovery, July 11, 2008).  This Magistrate Judge has applied this reasoning to discovery in habeas corpus cases for at least ten years, including the following capital cases:  *Campbell v. Bradshaw*, 2005 U.S. Dist. LEXIS 13225(S.D. Ohio, July 1, 2005); *LaMar v. Ishee*, Case No. 1:01-cv-541 (Order, June 30, 2005); *Taylor v. Bradshaw*, Case No. 3:04-cv-154 (Order, Dec. 29, 2004); *Hasan v. Ishee,* Case No. 1:03-cv-288 (Decision and Order, Oct. 16, 2004); *Hanna v. Ishee*, Case No. 1:03-cv-801 (Decision, Sept. 24, 2004); *Issa v. Bradshaw,*  Case No. 1:03-cv-280 (Decision, Sept, 4, 2004); *Moore v. Mitchell*, Case No. C-1-00-023 (Decision, Feb. 18, 2004); *Jones v. Bagley*, Case No. C-1-01-564 (Decision, June 22, 2002); *Henness v. Bagley*, Case No. C-2-01-043 (Decision, Feb. 18, 2002); *Fears v. Bagley*, Case No. C-1-01-0183 (Decision, Feb. 18, 2002); *Keene v. Mitchell*, Case No. C-1-00-421 (Decision, Apr. 17, 2001); *Raglin v. Mitchell,* Case No. MC-1-00-015 (Decision, Apr. 9, 2001); *Wogenstahl v. Mitchell*, Case No. C-1-99-843 (Decision, Jan. 15, 2001); *Gapen v. Bobby*, 2010 U.S. Dist. LEXIS 137976 (S.D. Ohio Dec. 23, 2010); and  *Gapen v. Bobby*, 2011 U.S. Dist. LEXIS 6266 (S.D. Ohio, Jan. 24, 2011).

This standard for discovery is further constricted by the Supreme Court's recent decision in *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011).  Prior to *Pinholster*, this Court had permitted discovery of facts which were proposed to be admitted at an evidentiary hearing in federal court.  *Pinholster* makes clear that such federally-discovered evidence may not be presented at a federal evidentiary hearing to show that a state court adjudication of a claim on the merits was

-5-

contrary to or an unreasonable application of clearly-established Supreme Court law.

### Discovery Sought by Petitioner

On his claim that he was denied his counsel of choice, Petitioner seeks to depose "all counsel who were his attorneys and all counsel who sought to represent him but declined due to the restrictions placed on Ahmed's funds by various courts." (Motion, Doc. No. 72, PageID 1903). He then lists sixteen attorneys who are labeled with the roles they have played in this case, presumably meaning that they did represent Petitioner at some point, and seventeen attorneys without a described role, presumably meaning they did not represent him. Under the heading "potential appeal counsel" are listed Thomas A. Hampton (administrator) and Judges Jennifer Sargus, John Solovan, and Mark Costine. No explanation is offered as to how any of these judges could possibly have represented Petitioner on appeal. Of those listed on this first claim, he only sought discovery from attorneys Olivito, Hershey, Costine, and Sustersic in post-conviction. He offers no justification for his failure to seek discovery from the others in post-conviction.

On his claim that "his relationship with his attorneys had devolved to the point that they [sic] was a conflict of interest," Petitioner seeks to depose sixteen attorneys (Motion, Doc. No. 72, PageID 1905). On his claim of ineffective assistance of trial counsel, Petitioner seeks to depose five attorneys, a trial mitigation specialist, and a defense investigator. *Id.* at PageID 1906. On his claim of ineffective assistance of appellate counsel, Petitioner seeks to depose six attorneys. *Id.* at PageID 1906-1907. On his claim that he was incompetent, he seeks to depose sixteen attorneys. *Id.* at PageID 1907. On his claim that he was prejudiced by denial of a continuance, he seeks to depose

two attorneys, the defense investigator, and the trial mitigation specialist. *Id.* at PageID 1908. On his claim that his trial judge was biased against him, he seeks to depose Judges Sargus, Solovan, and Costine. *Id.* at PageID 1908. On his claim of prosecutorial misconduct, he seeks to depose the Belmont County Prosecutor, Frank Pierce, and three deputies from the Belmont County Sheriff's Office; he also seeks to conduct records depositions of undescribed scope of the Belmont County Sheriff and Prosecuting Attorney. *Id.* PageID 1908-1909. On his gruesome photographs, alternate jurors in the jury room during deliberations, and excessive courtroom security claims, he seeks to depose all twelve of the jurors. *Id.* at PageID 1909-1911. He seeks to depose the Belmont County Jury Commissioner on his improper petit and grand jury selection claim. *Id.* at PageID 1911. Finally, on his Vienna Convention on Consular Relations claim, he seeks to depose Prosecuting Attorney Pierce and three Belmont County Deputy Sheriffs. *Id.* PageID 1911-1912.

## Analysis

### Ground One for Relief: Denial of Counsel of Choice

Petitioner's Motion contains no legal argument at all attempting to show that he meets the standard for discovery of any of this evidence. Instead, he merely recites law establishing the standard, then lists all the witnesses he wishes to depose, fifty-three unduplicated names if the Court has counted correctly.[1] That is not a legal argument at all, but merely a conclusory assertion that

---

[1] The Warden's counsel counted fifty-two. (Motion Opposing, Doc. No. 75, PageID 1924).

these deponents might have something relevant to say on the topic on which they are intended to be deposed. Even under the broad rules for discovery in the Federal Rules of Civil Procedure, a litigant must show good cause to exceed ten depositions, and the standard in habeas corpus is much stricter.

Secondly, the Warden opposes all discovery because Petitioner has made no specific allegations of fact about what he expects to discover. This is manifestly true of the Motion, which contains no such specific allegations at all. Faced with this opposition, Petitioner writes in the Reply that there are indeed "deep citations to the record in the petition itself." (Reply Memo, Doc. No. 76, PageID 1949.) As to the denial of counsel of choice claim, he cites "Petition, pp. 11-36," rather than to favor the Court with quotations in the Motion. *Id.* When those pages of the Petition are read, one finds the names of Sam Shamansky, Edward Susteric, Harry Reinhart, Don Schumacher, Brian Rigg, Peter Olivito, James Nichelsen, Adrian Hershey, Bob Suhr, and Joe Carpino. That is only ten people, not thirty-three. Furthermore, the standard for discovery is that a petitioner make "specific allegations of facts" that are expected to be discovered, not allegations of fact in a pleading that happen to mention the name of a person sought to be deposed.

Third, Petitioner did not even attempt to obtain discovery with respect to most of these persons in post-conviction. Only attorneys Olivito, Hershey, Costine, and Susteric were sought to be deposed in the state court.

Fourth, the request to depose all of these persons is not supported in a way which would be easy and transparently relevant: Petitioner himself presumably knows what he did to attempt to hire counsel, yet there is no affidavit or declaration from him about those efforts.

Finally, the Motion does not discuss what use is intended to be made of the discovery in light of *Pinholster, supra*.

these deponents might have something relevant to say on the topic on which they are intended to be deposed. Even under the broad rules for discovery in the Federal Rules of Civil Procedure, a litigant must show good cause to exceed ten depositions, and the standard in habeas corpus is much stricter.

Secondly, the Warden opposes all discovery because Petitioner has made no specific allegations of fact about what he expects to discover. This is manifestly true of the Motion, which contains no such specific allegations at all. Faced with this opposition, Petitioner writes in the Reply that there are indeed "deep citations to the record in the petition itself." (Reply Memo, Doc. No. 76, PageID 1949.) As to the denial of counsel of choice claim, he cites "Petition, pp. 11-36," rather than to favor the Court with quotations in the Motion. *Id.* When those pages of the Petition are read, one finds the names of Sam Shamansky, Edward Susteric, Harry Reinhart, Don Schumacher, Brian Rigg, Peter Olivito, James Nichelsen, Adrian Hershey, Bob Suhr, and Joe Carpino. That is only ten people, not thirty-three. Furthermore, the standard for discovery is that a petitioner make "specific allegations of facts" that are expected to be discovered, not allegations of fact in a pleading that happen to mention the name of a person sought to be deposed.

Third, Petitioner did not even attempt to obtain discovery with respect to most of these persons in post-conviction. Only attorneys Olivito, Hershey, Costine, and Susteric were sought to be deposed in the state court.

Fourth, the request to depose all of these persons is not supported in a way which would be easy and transparently relevant: Petitioner himself presumably knows what he did to attempt to hire counsel, yet there is no affidavit or declaration from him about those efforts.

Finally, the Motion does not discuss what use is intended to be made of the discovery in light of *Pinholster, supra*.

For these reasons, Petitioner's discovery requests with respect to his First Ground for Relief are denied in their entirety.

### Ground Two: Conflict of Interest/Breakdown in Attorney-Client Relartionship

On his claim that his relationship with his attorneys broke down to the point that there was a conflict of interest between him and them, Petitioner seeks to depose sixteen attorneys (Motion, Doc. No. 72, PageID 1905). Again the Motion has no argument about why these particular attorneys should be deposed, no specific allegations of discoverable facts. In the Reply, Petitioner does not even tell the Court where in the Petition any citations to allegations of fact might be found. Instead he states that the breakdown is "evidenced by the lawsuit he filed against appointed counsel and the extensive citations to the record where Ahmed is hostile to and complaining about appointed counsel." (Reply, Doc. No. 76, PageID 1950.) What extensive citations appearing where? The only record reference offered on this claim is "(November 9, 2000, Tr. 54)", presumably a reference to a transcript found in the Appendix. *Id.* Here also there is no declaration or affidavit from Petitioner setting forth any facts which might be discovered, so to speak his side of what happened in the relationships.

Petitioner never attempted to obtain discovery from these attorneys in state court except for Olivito, Hershey, Costine, and Susteric, but offers no justification for his failure even to seek discovery from the others. And Petitioner also fails to explain what use is intended for this discovery in light of *Pinholster, supra*. For these reasons, Petitioner's discovery requests with respect to his Second Ground for Relief are denied in their entirety.

**Ground Four: Ineffective Assistance of Trial Counsel**

As to his Fourth Ground for Relief, ineffective assistance of trial counsel, Petitioner seeks to depose five defense attorneys, the trial mitigation specialist, and the defense investigator. Here again the Motion itself lists no specific factual allegations expected to be proven by the discovery; there is just a list of names of proposed deponents. (Motion, Doc. No. 72, PageID 1906.) In the Reply Petitioner advises the Court that all his allegations of ineffective assistance of trial counsel can be in a twenty-eight page segment of the Petition, at pages 58-86. However, the pages of the Petition after page 51 are not numbered at all!

Here again conclusory allegations of ineffective assistance of trial counsel made in the pleading are not the same as specific allegations of fact expected to be discovery. In the Reply Memorandum, challenged about the lack of specificity, Petitioner asserts that he wants to learn from these lawyers "what did they know; when did they know it; what, if anything did they do about it; and why did they do or not do what they did." (Reply, Doc. No. 76, PageID 1951.) It is hard to imagine a more apt description of the forbidden "fishing expedition" than this.

Petitioner's Motion fails to distinguish between ineffective assistance of trial counsel claims which were fully litigable on direct appeal and those which would have had to be litigated in a post-conviction petition, i.e., those depending on evidence *dehors* the record. Petitioner claims he was denied discovery in post-conviction, but in that proceeding he only sought to depose Olivito, Hershey, Costine, and McCullough, but not Ferrick, Nichelsen, and Carpino.

Finally, the Motion does not discuss what use is intended to be made of the discovery in light of *Pinholster, supra*.

Accordingly, Petitioner request for discovery on his Fourth Claim for Relief is denied in its entirety. The denial as to Olivito, Hershey, Costine, and McCullough is without prejudice to its renewal not later than October 1, 2011, in a manner which cures the defects identified above as to their proposed depositions.

### Ground Five: Ineffective Assistance of Appellate Counsel

With respect to his Fifth Ground for Relief, Petitioner seeks to depose his direct appeal attorneys, Assistant Ohio Public Defender Pamela-Prude Smithers, Kelly Schneider, Joseph Willhelm, and Gregory Meyers, and his "Murnahan" attorneys, Alan Rossman and Michael Benza. (Motion, Doc. No. 72, PageID 1906-1907.)

The Motion contains no argument to show good cause. The Reply lists the "issues to be resolved in discovery" and then lists a series of thirteen non-exclusive topics to be explored, a list reminiscent of the non-exhaustive list in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), of possible ineffective assistance of appellate counsel issues. Again, this is a shopping list for a fishing expedition (to mix metaphors). The Motion does not distinguish between any issues of ineffective assistance of appellate counsel which may have been litigated in the Ohio courts and discuss what use is intended to be made of the discovery in light of *Pinholster, supra*.

With respect to his request to depose the "Murnahan" lawyers, Petitioner does not identify in the Motion any claim for relief in his Petition to which this discovery might be relevant. In the

Reply he indicates he wishes to learn "why they failed to timely file Ahmed's ineffective assistance of appellate counsel petition in the Ohio Supreme Court [which] may be significant in light of *Martinez v. Ryan*, United States Supreme Court Case No. 10-1001, cert. granted June 6, 2011, which presents the issue of when a petitioner may be entitled to the effective assistance of counsel in 'collateral proceedings.'" (Reply, Doc. No. 76, PageID 1953).

In *Martinez v. Schriro*, 623 F.3d 731 (9th Cir. 2010), the decision on which the Supreme Court granted *certiorari*, the Ninth Circuit held that there was no right to the assistance of counsel in post-conviction proceedings in Arizona even though that was the first proceeding in which a convicted person could raise a claim of ineffective assistance of trial counsel. If the Supreme Court were to reverse this holding, it would represent a major change in Sixth Amendment jurisprudence, because the Ninth Circuit was following prior Supreme Court law, e.g., *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Even if it did so, the new rule would probably not apply to this case. *See Whorton v. Bockting*, 549 U. S. 406 (2007), holding that the new Confrontation Clause rule announced in *Crawford v. Washington*, 541 U.S. 36 (2004), was not to be applied retroactively or to cases on collateral review. *Teague v. Lane*, 489 U.S. 288 (1989), requires that a new rule be a "watershed" rule before it is to be applied retroactively. As of February 28, 2007, the date *Whorton* was decided, the only rule the Supreme Court has identified as qualifying under the "watershed" exception is that adopted in *Gideon v. Wainright,* 372 U.S. 335 (1963). The new rule contended for by the petitioner in *Martinez* would be an extension of *Gideon* and therefore probably not qualify. Therefore it is not probable that deposing the "Murnahan" counsel would produce admissible evidence and Petitioner's request to depose attorneys Rossman and Benza is denied.

### Ground Six: Failure to Hold a Competency Hearing

In his Sixth Ground for Relief, Petitioner asserts the trial court violated his constitutional rights when it failed to hold a hearing on his competency to stand trial. (Petition, Doc. No. 35, PageID 255.) On this claim he seeks to depose sixteen persons, all attorneys (Motion, Doc. No. 72, PageID 1907). The Motion identifies no specific factual allegations expected to be supported by these depositions, and indeed makes no good cause argument at all. In his Reply, Petitioner asserts Dr. Jeffrey Smalldon testified during mitigation that Petitioner had a psychotic disorder and the sentencing judge said he was "deranged." (Reply, Doc. No. 76, PageID 1954.) He then concludes "These facts and others identified with extensive record citations in the petition [no record reference given] are specific allegations which, if true, would support habeas corpus relief." *Id.*

Having read the relevant portion of the Petition (Doc. No. 35, PageID 255-264), the Court fails to understand what specific factual allegations made in the Petition require deposing any of these attorneys. Petitioner has also not shown what the intended use of this deposition testimony is in light of *Pinholster, supra*. The discovery requested with respect to the Sixth Ground for Relief is denied.

### Ground Seven: Denial of a Continuance

At the commencement of voir dire, defense counsel advised the Court that Petitioner had just faxed them a list of sixty potential witnesses whom he expected them to find and interview in

preparation for trial (Petition, Doc. No. 35, PageID 265).  The trial judge denied a continuance of trial.  *Id.*  On the issue of prejudice arising from this denial, Petitioner seeks to depose Messrs. Olivito, Hershey, and McCullough and Ms. Ferrick.  No statement is made in the Motion of what specific factual allegations are expected to be shown by the deposition testimony, nor why anything these members of the defense team had to say on the subject could not have been submitted by affidavit on post-conviction.  In the Reply, Petitioner makes the conclusory allegation that the depositions will establish prejudice (Reply, Doc. No. 76, PageID 1955).  How will they do that?  Did these persons later investigate the sixty witnesses and learn what they would have said?  Does Petitioner have some information about what the witnesses would have said?  There is no evidence related to this Court which supports the notion that these witnesses have anything to add.  Compare *Bracy*, where the petitioner had significant information supporting the sought discovery.

The request for discovery on the Seventh Ground for Relief is denied in its entirety.

### Ground Eight: Biased Trial Judge

Petitioner claims that the trial judge, Common Pleas Judge Jennifer Sargus, was biased against him.  On that claim he seeks to depose Judge Sargus and two other judges, John Solovan and Mark Costine (Motion, Doc. No. 72, PageID 1908).  Neither the Motion nor the Reply says anything about what specific facts are expected to be obtained by these depositions which would support the claim.  Judges Solovan and Costine are not mentioned in the Petition for this Ground for Relief.  The Petition seems to rely on facts of record to show the asserted bias, and there is no explanation of what additional facts are sought or why support for those factual allegations was not made in post-

conviction. The motion papers also do not discuss the intended use of the deposition testimony in light of *Pinholster, supra*. Petitioner's request for discovery on the Eighth Ground for Relief is denied in its entirety.

### Ground Nine: Prosecutorial Misconduct

In his Ninth Ground for Relief, Petitioner asserts he was denied a fair trial by prosecutorial misconduct. Every instance of asserted misconduct in the Petition is conduct which occurred on the record (Petition, Doc. No. 35, PageID 277-298). Petitioner has made no showing – not even an attempted showing – of why he needs discovery to demonstrate that certain conduct occurred when that conduct is evidenced by the record. Petitioner's request for discovery on the Ninth Ground for Relief is denied in its entirety.

### Ground Thirteen: Gruesome Photographs
### Ground Eighteen: Alternate Jurors in the Jury Room
### Ground Twenty-One: Excessive Courtroom Security

On each of Grounds Thirteen, Eighteen, and Twenty-One, Petitioner seeks to depose the trial jurors. On all three of these claims, in the Motion he merely lists the jurors and makes no argument on good cause. In the Reply he explains he wishes to depose all jurors "to establish prejudice" on these three claims. The Warden opposes this request on the basis, *inter alia*, that the jurors would not be competent witnesses on what affected their decision. (Motion Opposing, Doc. No. 76, PageID 1940, *citing Tanner v. United States*, 483 U.S. 107 (1987)). The Reply makes no response on this point. This Court has regularly denied permission to depose trial jurors on this basis and

does so now.

As additional reasons, the Court notes that, while Petitioner sought to depose the jurors in post-conviction, it was on different claims (Motion, Doc. No. 72, PageID 1896).  Finally, Petitioner has not shown what use is intended for this discovery in light of *Pinholster, supra*.

### Ground Twenty-Three: Improper Petit and Grand Jury Selection Procedure

The entire text of Petitioner's Motion on this claim reads "Ahmed seeks to depose the Belmont County Jury Commissioner to support this claim." (Motion, Doc. No. 72, PageID 1911). That "argument" is so brief that the Warden does not respond beyond saying that he opposes the Motion in its entirety.  The Reply also does not mention this proposed discovery.

From the Petition, the Court learns this is a fair cross-section claim.  The Petition claims, without citation to source, that "nonwhites" comprise approximately five percent of the population of Belmont County, Ohio (Doc. No. 35, PageID 385).  Neither the Petition nor the Motion gives any hint that this claim was properly presented to the trial court pre-trial as required by the Ohio Rules of Criminal Procedure.  Petitioner claims he heard talk among the police that they would ensure a 100% white jury in this case. *Id.* at 386.  Was that allegation ever presented to the trial court, either before trial or in post-conviction?  It certainly is not supported by any evidence presented here.  Apparently no attempt was made to obtain this discovery in post-conviction.  And, of course, no mention is made of any intended use of this discovery under *Pinholster, supra*.  Petitioner's discovery request on his Twenty-Third Ground for Relief is denied.

**Ground Twenty-Five: Asserted Vienna Convention Rights**

In his Twenty-Fifth Ground for Relief, Petitioner asserts that he was "not advised of his rights pursuant to the Vienna Convention on Consular Relations." (Petition, Doc. No. 35, PageID 391.) He asserts that he is "as citizen of both the United States and Pakistan." *Id.* In support of this Ground for Relief, he seeks to depose the Belmont County Prosecutor, Frank Pierce, and three Belmont County Sheriff deputies (Motion, Doc. No. 72, PageID 1911-1912).

In opposing this discovery, the Warden cites authority for the propositions that (1) the United States does not recognize the other citizenship of a person claiming dual citizenship once they have taken the oath of allegiance to the United States required for naturalization, and (2) under international law, a dual national cannot claim the protection of one of the two countries while present in the other. Petitioner makes no response to this argument; in neither the Petition nor his motion papers does he offer any proof that he had any rights under the Vienna Convention. Therefore the request for discovery on this Ground for Relief is denied.

**MOTION FOR EVIDENTIARY HEARING**

In this Motion, Petitioner seeks an evidentiary hearing on (1) all grounds for relief not decided on the merits in the state courts, (2) all grounds decided on the merits on which this Court finds eligibility for relief under 28 U.S.C. § 2254(d); and (3) all "factual issues raised by the affirmative defenses asserted by the Warden." (Motion, Doc. No. 73.) In support, all Petitioner

does is to assert baldly that he was given no opportunity for a hearing in the state courts.  He makes no effort to identify what evidence he would present at such a hearing.  He does not even distinguish which grounds for relief he believes the state courts decided on the merits and which they did not.

The Motion does not show entitlement to an evidentiary hearing under 28 U.S.C. § 2254(e)(2) or under *Pinholster, supra*.  The Motion for Evidentiary Hearing is therefore denied.


September 8, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge
